May it please the Court, Averill Rothrock with Connie Sue Martin of Schwabe Williamson and Wyatt for the appellants, Chairman Robert Kelly and nine other officers or department heads of the Nooksack Indian Tribe. This case is the latest iteration of plaintiffs' challenge to their legislative disenrollment by the Tribal Council, clothed in a RICO complaint. It does not belong in federal court. Where does it belong? Well, it's an intra-tribal dispute that the tribe has exclusive... But it's more than that. I mean, I've got to say, the facts alleged in this case are really remarkable. And I don't see much in the way of a denial, so, and we have some degree of corroboration from the Department of Interior, so let's see if I have this right. Your clients postponed elections, purported to act, albeit they didn't have a legal quorum, disenrolled hundreds of tribal members, having the effect of reshaping the electorate before the elections could actually be held, evicting plaintiffs from their homes, including some who had substantial investments, terminating health services, cutting off educational assistance, firing the tribal court judge who was about to issue an unfavorable decision, ignoring orders of the tribe's own Court of Appeals, which had said the rule of law had, quote, completely broken down, withdrawing from the established appellate court and creating a new tribal supreme court to which they employed themselves and their allies. That's a record a tin-pot dictator of a banana republic might be proud of. If any of that is true, where do these people go for recourse? Well, first of all, to say that they didn't have... Could you answer that question first? Where would they go for recourse? They go to the tribe. But the tribe is, if those allegations are true, just appointed its own court to make sure they can't go to their own tribe. Well, the exclusive jurisdiction to resolve this rests in the tribal court, and, you know... And the fact that the tribe is no longer recognized by the federal government. Well, it is recognized by the federal government. Well, I misstated. That the actions of the purported leaders of the tribe are not recognized by the federal government. Well, you're talking, I believe, Your Honor, about the BIA letters. And the BIA letters are limited. They're not a resolution of the merits of this dispute. They go to the relationship between the two nations. It's sovereign to sovereign, and the BIA's role is to determine the right to federal monies. And that's the limited scope that the BIA letters address. And the BIA... Doesn't the United States have a greater relationship? I mean, doesn't the United States stand in a trust relationship with the tribe? Well, the letters themselves, on their face, if the court reads them at SCR 401... Well, I know what they say, and it strikes me it's pretty powerful evidence which the district court could properly take in consideration at the stage of trying to ascertain jurisdiction, which frequently involves factual questions. And I didn't see any evidence submitted by your client to the contrary. So it seemed to me that district court had a pretty ample basis for saying that things were not happy in Mudville. Well, since that time, and the docket of the district court reflects this, there has been a memorandum of understanding between Kelly, recognized by the BIA as the chairman of the Nooksack Indian Tribal Council, setting up a new election. And that's at docket 121. Well, then it sounds like what you need to do, because the district court said its adjudication of the issue was temporary, sounds like what you need to do is go back to the district court and say, okay, things have changed, and get the district court to change its ruling. But I don't see how that causes us to review what he decided when he decided the thing that's on appeal any differently. But the court, to recognize the district court, or even this court, resolving the merits of that dispute, the courts, the federal courts do not have authority to determine whether the tribal council was properly constituted with a quorum. That has to be done internally according to By whom? Because the federal government's position, there is no tribal council, because there's not a quorum. So that everything that your clients purported to do, up to and including appointing its own Supreme Court, would be, in the views of the Department of the Interior, ineffective. Why should we decide differently? Because the precedents like Santa Clara Pueblo and Stock v. West say that this court does not have jurisdiction to resolve that. But those cases presuppose that there are valid and legitimate governments operating within the tribe. What if we disagree with you regarding the import of the letter from the Department of the Interior? Do you lose? I don't believe so, because the BIA letters go to the issue of sovereign immunity. They don't go to this court's fundamental lack of subject matter jurisdiction to resolve the intertribal dispute. So you can't take what the BIA has said in their letters, and this court cannot say that resolves the intertribal dispute. So no, we do not lose. And I think that you see this, for example, in Cayuga Nation, which is a Second Circuit case that we cited. When there is a conflict over tribal leadership, the BIA is precluded from issuing a recognition decision except where a federal purpose requires recognition. So again, that limited authority of the BIA. I think what this court can take comfort in is the fact that the tribe is working with the BIA, and they do have an agreement, and they are going to work this out through the proper channels, which involves the tribe as a sovereign. Then what do you have to be worried about? Working it out? The district court will recognize that. But the case we have teed up in front of us doesn't show anything with cooperation between the people, well, the people currently in power, your clients, and the Department of the Interior. Well, I think the cooperation is, I mean, the letters are. You're telling me it's getting better. But I don't know how we can rely upon that. That's something the district court will have to adjudicate if the case continues. But that's not something that's in front of us, other than from what you just said. You haven't submitted anything to us to suggest the circumstances have changed? Well, the documents attached to the Declaration of Ricky Armstrong include decisions by, for example, a pro tem judge, subsequent to many of the facts alleged here, working through these issues. There is a tribal court. It is taking cases and resolving them. So where do I turn to get this information? That's in the record attached to the Declaration of Ricky Armstrong. In our record? Yes. Where? Yes. Well, the Ricky Armstrong Declaration runs from ER 141 to 326. I believe it's Exhibit 4 or very close to that. There is a decision by the pro tem judge. So the tribal court is operating, and yes, there was a kerfuffle. And again, that is within the jurisdiction of the tribal council to constitute that court. It's not a constitutional court. And if you look at the Constitution, which is also in the record, it's the first exhibit to Ricky Armstrong, the tribal council has the right to establish a court to resolve disputes on the reservation between the Indians. It's not a constitutional court, and that court has no authority over the tribal council itself. It's the other way around. And that is the way that this sovereign and its constitution is set up. And it's an independent sovereign, not subject to the jurisdiction of the federal courts. I think I will reserve the rest of my time.  Thank you. Thank you. Good morning. Anthony Broadman representing Margretti Rebang, Domenador Ore, Christina Payato, Elizabeth Oshiro, Olive Oshiro. May it please the court. The issue on appeal here is whether Mr. Kelly can use tribal sovereign immunity along with his associates to avoid the impact of a civil RICO lawsuit brought against him in his personal capacity only. Now the law on that after Lewis v. Clark and after this circuit's decisions in Maxwell v. County of San Diego and Pastore v. Garcia is abundantly clear. It is clear that if you sue an individual, even if they are employed by a tribe in their personal capacity, sovereign immunity does not attach if the remedy sought is against the individual. But could this could this claim be adjudicated without delving into the legitimacy of defendants action as the tribal council? Absolutely, Your Honor. How? Because this is not an intertribal dispute, unlike any of the other cases that Mr. Kelly and his associates have cited to the court. This does not require a district court to choose between two factions. There's no splitting of the baby. Those cases are typically rejected. But how is that not the case? Because if in fact defendants are right in their position that they were the legally authorized tribal council, then doesn't inherently that mean your client loses? And if your client wins, doesn't that require the court to say their actions as tribal council were ineffective? No, Your Honor. And we need to be careful to not conflate the two questions here. One is sovereign immunity and one is whether this is an intertribal dispute. On sovereign immunity, if you sue an individual, even if they are acting in the course and scope of their official capacity under Lewis v. Clark, under Maxwell, under Pastore, sovereign immunity is not a bar. I'm more concerned about the jurisdiction part. That is, can this court or any federal court evaluate the actions of defendants? I appreciate that, Your Honor. And I think the answer to that is still just as clear as the sovereign immunity question. This is not an intertribal dispute because it is not like any of the other cases cited by Mr. Kelly and his associates for the proposition that the court is going to have to make substitute its judgment for the judgment of a tribal body regarding an issue of tribal law. It's not Smith v. Babbitt. It's not a case where the district court has to decide, shall I put somebody's name on a membership role? That is an internal tribal dispute. All of that is somewhat academic because the Department of the Interior has already rendered all the decisions necessary in connection with this case. Well, what gives it the authority? The letters are careful in saying that they pertain to what DOI is doing, the contracts and so forth. It's not purporting to adjudicate for the tribe whether this government is legitimate. So that, and I appreciate the question, Your Honor. Here's the answer. We, as so often is the case in the Western District of Washington, we don't have to go past the district court's order. The court relied on those letters. It made explicit, it was deferring to the judgment of the Department of the Interior on those letters based on 25 U.S.C. The Interior, the Department of the Interior has the authority to make internal decisions whether they are intra-tribal or not. It has authority to make decisions on the reservation regarding Indian tribes. And let's talk about Cayuga. Well, there's a distinction. Certainly the federal government has the authority and DOI has the authority to decide that we're not working with this group. So the federal funding that otherwise would, all that, that doesn't say that Department of Interior is the great white father in Washington deciding for the tribe who the tribal president should be. And I think the letters are careful not to lean into that decision. And my concern is that I can't explain a court decision in your client's favor that doesn't ultimately say what defendants purported to do as tribal government was ineffective. And let's talk about a case that was just cited to the court, Cayuga v. Tanner from the Second Circuit in 2016. In that case, the Second Circuit said federal courts stay out of intra-tribal questions. You are not to be involved in intra-tribal questions, but the BIA can. The Department of the Interior can make decisions and all of the cases regarding faction disputes acknowledge that. The BIA, when... That was sort of the reason for the question I posed to your colleagues and I'll pose to you as well. What's the other recourse? It seems to me that federal courts are pretty low on the list of places to go for recourse. Well, one, the recourse for a RICO lawsuit, the jurisdiction for a federal RICO lawsuit is likely exclusive to federal district court. That is the recourse for this suit. That is the suit we are bringing. The question of exhaustion in other cases, other tort suits, that is not before the court. That doesn't help if resolution of the RICO case requires the court to do something that it can't do. In the same way, it's a wild analogy, but I'm going to roll here, state secret doctrine frequently stops lawsuits in their track because the court can't adjudicate without risking the state secret. And I think we have some of the same problem here. This is a question of justiciability. It's a question of, and there are cases, we're not arguing that there aren't cases of intra-tribal disputes. Intra-tribal disputes, as all of these cases cited by Mr. Kelly and his associates indicate, Smith v. Babbitt, Lewis v. Norton are cases where district courts are asked to put somebody's name on a membership role. The other cases, Sack and Fox, like the Meskwaki litigation cited to you, those cases are where there are two factions fighting. District court, you figure it out. You tell us who's in charge. District court's not going to do that. That's the role of the interior. And here, interior made a decision that it was entitled to make. Again, going back to Cayuga, interior can make decisions for reasons unrelated to the district court's question of subject matter jurisdiction. So what happened in Cayuga? The Department of the Interior made a decision regarding leadership at Cayuga. And the district court, even though that decision was unrelated to the interior saying district courts have jurisdiction over this because one faction is correct and one faction is wrong, the Second Circuit said it doesn't matter why interior makes the decision. If interior makes a decision regarding who is the legitimate leadership of a tribe or who is not, district courts are entitled to rely on those decisions for purposes of formulating their own subject matter jurisdiction. So there are no intra-tribal disputes in this case. Well, one of the issues that I have is you say, and I think correctly, that exhaustion is not presented in this case, and yet that seemed to be the entirety of the district court's analysis when the district court should have been analyzing subject matter jurisdiction. I would disagree slightly, Your Honor, and here's why. I think the core in touching exhaustion was expressing respect for tribal governments that haven't devolved into a complete lack of tribal governing body. It was saying there are circumstances out there where a tribal governing body will exist. And in those situations, we will defer to an actual tribal governing body. But here it's clear the Department of Interior said there is no tribal governing body. And let's be clear about, as long as we're talking about extra record material, in a case brought in the Western District of Washington, which is cited throughout these papers, it's called Nooksack Tribe v. Zinke, Mr. Kelly and his associates attacked the Department of Interior determinations. They said these determinations are wrong. And what did the district court say? It said, Mr. Kelly and your associates, you are not the governing body of the Nooksack Tribe and you have no authority to attack those decisions. This is a ... Is that on appeal? No, they failed to appeal. And more than 30 days have elapsed. So the key there is that if Mr. Kelly and his associates masquerading as a tribal governing body have a problem with the United States, that is a dispute under the Administrative Procedures Act between Mr. Kelly and the Department of the Interior. It has nothing to do with my clients who are relying on determinations by the United States in deciding who is in charge of this tribe. But shouldn't that then be your remedy as opposed to being in federal court? Again, to echo Judge Clifton, we're kind of last in the open doors. What would that be, Judge Friedenthal? What remedy are you referring to? If the DOI believes that there is no functional tribal government here, they can assume the provision of benefits for the plaintiffs in this case. We believe that will happen, but it doesn't take back the home that was stolen from my  It doesn't take back the equity in the home that she was locked out of. It doesn't take back the months of benefits to which my clients are entitled to that they were deprived of. But still, aren't we, in order to reach those decisions, aren't we still looking at the Constitution, the election ordinances, and whether the holdover counsel was properly constituted? No, Your Honor. The District Court has made very clear, I'm not going to make a membership decision. Don't ask me to do it. This is a RICO lawsuit. At the end of the day, trial is going to show whether Mr. Kelly and his associates defrauded Mrs. Rabang. That's it. It's not going to decide who's a member. It's not going to decide which faction is in control. Unfortunately, there's no relief available under RICO that can resolve the disaster at Nooksack. All that is available, all that is available to my clients at this point are damages under  Should we ask the United States for its view? No, Your Honor. Your Honor, this matter is really only before the court on sovereign immunity. We would argue that this question of subject matter jurisdiction is not inextricably intertwined with sovereign immunity. This matter should be affirmed, sent back to the Western District of Washington to handle in the orderly way that it has done already. Lewis, let's remember, Lewis tells us exactly what we should do. Footnote two in Lewis v. Clark says, you don't have sovereign immunity for personal capacity As much as those of us who represent tribes and tribal members don't like it, Lewis v. Clark says under footnote two, seek to dismiss based on official immunity. Seek to dismiss based on legislative immunity. How can we ignore our jurisdiction? That's the first issue. This case was, this case, the collateral order in this case that is appealable is the sovereign immunity question. Mr. Kelly and his associates have argued that the jurisdiction, the justiciability issue is inextricably intertwined with that, and it's not. They're two different legal standards under Wong. But we still have the question. We can't, if we don't have jurisdiction over the case, we're not supposed to proceed beyond that question. So you're right, the question that's teed up in front of us is sovereign immunity. But I'm not sure how we can disregard the question of jurisdiction. Well, you can, Your Honor, because denials of motions to dismiss based on lack of jurisdiction are always left until the end of a case. That would violate the, that would essentially swallow the rule under Vaughn that only questions that are inextricably intertwined with a collateral order are actually before the court. But it's somewhat academic because this is not an intertribal dispute. The federal government has resolved any question that the district court will need to answer. All right. Kelsey, you've exceeded your time. Rebuttal. Thank you. This court should decide both issues. They were in our opening brief, and the other side never objected to this court's rightful decision of whether it has subject matter jurisdiction or not. It goes hand in hand with this appeal. Should we ask the government for its view? Well, I think the government's working on their right now, according to the memorandum of understanding, because there has been another election held. And this is in the district court docket at 121. And when this agreement was reached in August of 2017, I want to point out that it was with Chairman Kelly as the chairman of this tribe, and the funds have been flowing to the tribe from that date. So to go back to the 2016 BIA letters and say that this is all resolved and that Councilman and Chairman Kelly is not being recognized is wrong. Well, again, I'm not sure how we can act on, I mean, I've looked for the Exhibit 4 you referenced and I haven't found it yet. I'll keep looking. But to the extent that you're telling me things that have happened subsequently, that strikes me as something for the district court to act on. I understand. That's something that we can say, but what should have happened later, that's just later. You know, I'd like to just spend a few minutes on Cayuga Nation because, again, just as Was your answer a yes or a no? To which question? To Judge Clifton's question whether or not we should solicit the views of the United States. Yes or no? Yes. All right. Because I would say that the BIA is very cognizant of the limitation on their jurisdiction and they are not to decide these issues on the merits for the tribe. Going back to Cayuga Nation, in that case, the Second Circuit did give deference to the BIA determination to allow one faction of the tribe to protect the tribe's rights vis-à-vis a third party. So it was not stepping into the actual merits of the membership dispute, but it was recognizing one faction to bring the lawsuit to protect the tribe's rights. And here we have the sovereign immunity issue of a tribe that, according to its own constitution and its understanding of its quorum and all of the issues that, you know, the plaintiffs do not like and disagree with and want to overturn, the sovereign immunity of the Nooksack for this court to decide the merits of that and then, based on that, say that they would not recognize sovereign immunity, for example. It's putting the cart before the horse to resolve those disputed issues. If you have exceeded your time, counsel, please wrap up. Okay. I just wanted to point out that Chief Justice Mary Schroeder in the Lewis v. Norton decision called sovereign immunity and subject matter jurisdiction the double jurisdictional whammy that prevents litigation of issues like this in federal court. All right. Thank you, counsel. We ask you to reverse. Thank you. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. The next case on the calendar for argument is United States v. Mondragon.
judges: Rawlinson, Clifton, Freudenthal